By the Court, Daniels, J.:
No question was made upon the argument of this cause but what the general proposition contained in the charge, that all who confederated together for the commission of a felony, and were present aiding and assisting in its perpetration, were in judgment of law equally guilty of the felony committed.
But it was earnestly maintained that the evidence in this case would not, in any view of it, bring it within the application of that principle, and that it was error therefore in the court to withhold the instruction requested from the jury. If they believed—as it will appear from the extended statement already given of the evidence they very well might have done—that the pistol was fired by the hand of the prisoner, then the proposition involved in the request to charge would be of no practical consequence in the case; for if he was the person who did fire it, the offense committed by doing so would be precisely the same whether he acted alone or in concert with others who were present to render him aid and assistance. His crime would be murder in either case, if he intended to produce the death of the person who was shot. In order to reach that conclusion the jury would of necessity have to be satisfied that the prisoner had the possession at that time, and used, *335 the revolver afterwards found with Givens; for the pistol found with the prisoner was shown to be incapable of discharging the ball. But as the evidence stood upon the trial, there would not seem to be any great difficulty in arriving at the presumption that the prisoner did use this revolver, and found ready means at hand to transfer it to Givens, which he would naturally be disposed to do in order to avoid as far as possible all direct indications of his guilt.
If, however, the jury were not satisfied that he used the revolver, then it would be an important inquiry in the case whether any other person did who was acting in concert with him. And it is in view of that contingency that the question raised by the request to charge becomes important. The court would not be justified in giving the instruction to the jury, which the request required, unless there was such an entire absence of evidence before them as to leave no ground for discussion or deliberation upon the subject. It is a familiar principle in our jurisprudence, that the jury shall determine all questions of fact presented in the controversy submitted to their deliberation, even though the evidence upon which they arise may be slight and in a great measure unsatisfactory. The law regards the court as possessing no superior qualifications over the jury for the determination of mere questions of fact.
The principal evidence in the case tending to show that the homicide in question was committed by some person with whom the prisoner acted in concert, and who was aided and abetted in the aet'by him, is that which shows that the prisoner Skidmore and Givens were together by appointment on the night when it happened. And after they came together they attended places of amusement and entertainment, drank together, and visited various houses of ill-fame, and in that manner reached the portion of the night when, if at all, the crime afterwards *336 committed could be committed with a strong probability that its perpetrators would escape detection. Their con duct during the previous portion of the night was jus such as would ordinarily be expected from persons who contemplated some offense upon the person or property of another. And in the course of their wanderings they are sworn to have announced their intention to visit the house where the crime was soon afterwards committed. Whether they made such a statement or not was of course a question for the jury. If they did, it would indicate the probability that they did not separate, as Givens said they did, on the corner of Huron and Ellicott streets, which was the opposite side of the block from Mrs. Cooley’s house, but that they continued together until they reached her house. The same probability is increased by Givens’ possession of the revolver, the circumstance that one cartridge had been discharged from it, and that he very soon afterwards was anxious to divest himself of. it, and actually did transfer it to the possession of another person. And added to that is the fact that some person other than the prisoner was discovered very soon after the homicide on the other side of the block, who passed down Batavia street and was then seen running and endeavoring to secure shelter or concealment in a house very near at hand. Besides, it may well be asked, why were these three persons together on the corner in the immediate vicinity of the place where the homicide was committed, concededly, within a very few minutes before its perpetration ? Eor if it had been afterwards, they would have heard and known something of it, and probably have been seen and identified by some members of „the police force who were on their way to the place where the crime was committed, and in search of its perpetrators. Then, again, if they contemplated no outrage on the property or person of any other, no explanation is given of their conduct in arming themselves with and *337 carrying along with them the deadly weapons found to have been in their possession. A rational explanation of that circumstance would be that they were intended for use, by way of assault or defense, as either might become necessary to overcome resistance or secure escape. A jury most certainly would be at liberty to attribute such an intention to these persons on the night in question. When all these circumstances are considered together, it must become obvious to every one that the evidence in the case was of such a character as to render the instruction requested manifestly improper.
The evidence showing that Givens had a larger foot than the prisoner, tended in 'some degree to show that he might have been the person seen upon Ellicott and Batavia streets, who sought admittance into the house of Mrs. Sargent. Every circumstance, however slight, which had a tendency to connect him as a principal with the homicide, was proper to be submitted to the consideration of the jury; for if they were not satisfied that the prisoner himself inflicted the mortal wound, the inquiry was very naturally suggested by the circumstances, whether Givens did not do it, in compliance with a common understanding or purpose existing between him and the prisoner, and in the presence, actual or constructive, of the latter. In cases of this nature, where the prosecution is more dependent upon circumstances to make out the case than perhaps in any others, nothing should be withheld from the jury that in any reasonable view will aid in the development of the transaction. If it could have no effect in that direction, then it was so entirely immaterial as to be incapable of producing any injury whatever to the prisoner.
As to the evidence which was given showing the disposition made of the pistol, which was proved to be capable of discharging the ball that was used, it was so clearly pertinent that no time will be consumed in its consideration.
The remaining exception was taken to the charge of the *338 court respecting the evidence of character. The prisoner’s counsel is quite right in saying that the circumstances proved upon the trial which exhibited. the prisoner’s conduct, associations and habits on the night in question, could not have been given in evidence for the mere purpose of affecting his' character. But they were material as evidence in other respects, having a bearing upon the probability of the prisoner’s guilt, and as such were entitled to the consideration of the jury. Their full bearing in that respect could not be very well given to them without bringing them directly in conflict with the evidence of the prisoner’s character; and so far as that was the case, they would very much weaken the effect of that evidence in the consideration of the jury. But that species of evidence is always liable to be overcome in the same manner in every case where it is given. The circumstances proved to establish the guilt of the accused in every case affect his character; and where they clearly indicate guilt, their effect is so great that proof of good character is of little or no consequence. In all these cases the circumstances could not be proved for the mere purpose of affecting the character of the accused. But they are of the very gist of the issue, and as such the accused must be prepared to meet them; and when thus proved, the jury may very properly give such effect to them, in all respects, as in any view of the evidence they are legitimately entitled to. Evidence of character is always given for the purpose of leading the jury to doubt the effect which the other circumstances proved would otherwise be likely to have upon their minds; and, as such, it must be considered with those circumstances, and where they are of such a character as entirely to overthrow it, that evidence can have no effect at all. Whenever it is given, it must be considered, not by itself, but in view of all the other facts and circumstances appearing in the proof.
The judgment should be affirmed.